**McCANDLESS, Commissioner of Immigration, v. UNITED STATES ex rel. CHILA.**

Circuit Court of Appeals, Third Circuit. January 23, 1930.

No. 3983.

George W. Coles, U. S. Atty., and Charles Denby, Jr., Asst. U. S. Atty., both of Philadelphia, Pa., for appellant.

Adrian Bonnelly, of Philadelphia, Pa., for appellee.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and THOMSON, District Judge.

BUFFINGTON, Circuit Judge. In the court below Pasquale Chila sued out a writ of habeas corpus praying his discharge from the custody of the Commissioner of Immigration, who held him for deportation. On hearing, the petitioner was discharged, whereupon the Commissioner took this appeal. Several questions are raised touching the construction and application of the various statutes bearing on immigration, which have been ably discussed. We do not feel we are required to pass upon them, for to our mind the rights of the petitioner depend on the underlying question of fact; namely, when did the petitioner arrive in the United States. In that regard he claims the date of such arrival was April 1, 1921, the warrant of deportation, which was made April 16, 1926, was too late in issue.

The proofs show the petitioner was called before the inspector, and testified he was born in Italy, had gone to Mexico in 1920, worked there as a barber, and had embarked at Vera Cruz, Mexico, for New Orleans, paid his passage, and landed at the latter port on Easter Sunday, 1921. He testified he was given a medical inspection, that he with others was stood up in line and inspected, and then allowed to land. He further testified he remained five months in New Orleans, living with a cousin who has returned to Italy. That he then went to Corona, Long Island, where he lived two or three months with his uncle, Antonio Lardi, at 116 Corona avenue. From there he went to Reading, Pa., in 1922, and has resided there since that time, working as a barber. That on June 7, 1925, he married a woman whom he had known in Reading for two and a half years. That he had acquired a home in Reading worth $7,000, subject to a mortgage of $2,500.

On cross-examination the petitioner was unable to give the names of the vessels on which he sailed from Genoa to Mexico or from Mexico to the United States or the street name or number of where he lived or

worked in New Orleans. In view of the lapse of time and of the fact that many intelligent persons cannot give the names of vessels on which they have made ocean voyages, we are of opinion the testimony of the petitioner makes out a prima facie date of arrival in 1921. Indeed, the Commissioner of Immigration at New Orleans, to whom this testimony was referred, stated in a letter which the immigration authorities put in evidence that "the testimony of the alien has been carefully reviewed and it has left the impression that possibly he arrived at this port from either Mexico or Cuba as a member of the crew of a vessel. His description of the manner in which he was lined up with other aliens on shipboard for a medical examination tallies in every detail with the manner in which crew-men are examined by the Public Health surgeon and Immigration Officers at this port."

No witness was called to contradict petitioner's statements. It is true the government called a witness who had a quarrel with the petitioner's father and who stated the latter had told him "that the young man came to the United States from Cuba about July, 1923." This hearsay, consisting of declarations of the father made in the absence of the petitioner, was not competent. Moreover, the father, who is shown to reside in Reading, was not called to show the basis of his statement, and, in the absence of proof to contradict the petitioner, we are of opinion the petitioner arrived in 1921, and that the deportation warrant did not justify deportation. The order of the court below is therefore affirmed.